SABRINA FRANKLIN,

        Plaintiff,

                                            Case No. 25-cv-781-pp

      v.

STELLANTIS CHRYSLER
and UAW SOLIDARITY HOUSE

        Defendants.

**ORDER SCREENING AMENDED COMPLAINT (DKT. NO. 12) AND DISMISSING CASE WITH PREJUDICE FOR FAILURE TO STATE A CLAIM**

On May 30, 2025, the plaintiff, representing herself, filed a complaint against her employer (Stellantis Chrysler), her union (UAW Solidarity House) and three individuals working for Stellantis and the union, alleging that the defendants had delayed training her for a "backup SBU officer" position because of her race and color. Dkt. No. 1 at 1–2. In late 2025, the court screened the original complaint, determined that it did not state a discrimination claim under Title VII of the Civil Rights Act of 1964 and ordered the plaintiff to file an amended complaint. Dkt. No. 11 at 9.

At screening, the court identified several problems with the plaintiff's original complaint. Id. at 5–8. First, the court dismissed the individual defendants, explaining to the plaintiff that under Title VII only her employer is a proper defendant. Id. at 6. Next, the court described how the plaintiff's complaint did not sufficiently explain the position for which she alleges she was

1

not properly trained. Id. at 7. The court explained that the plaintiff had not alleged whether "backup SBU officer" was a position with Stellantis or with the Union, meaning the court could not determine whose alleged discriminatory conduct was at issue. Id. The court also explained that although the plaintiff had described her claim as one for failure to train, because she was asking for back pay, it appeared that she actually was making a claim based on the failure to promote. Id.

The court pointed out that the plaintiff had failed to allege why she believed the defendants' failure to promote her was based on her race and color and not on some other reason. Id. It explained that the plaintiff never had identified her race or color and never had described any statements or actions that could demonstrate that the failure to promote was discrimination rather than negligence or some other reason. Id.

Given these deficiencies, the court determined that the plaintiff had not alleged sufficient facts to allow "the court to draw a plausible inference that the failure to promote was connected to her race or color." Id. at 7. The court gave the plaintiff the opportunity to amend her complaint and gave her the following instructions:

> When writing her amended complaint, the plaintiff must provide the court with enough facts to answer the following questions: 1) Who violated her constitutional rights (Stellantis Chrysler or the union or both)?; 2) What did each defendant do to violate her rights?; 3) Where did each defendant violate her rights?; 4) When did each defendant violate her rights?; and 5) Why does she think that the defendant(s) acted based on her race and/or her color, and not for some other reason? The complaint must explain what the promotion was for (what a backup SBU officer is) and whether the promotion was for a job at Stellantis Chrysler or for a position with UAW

2

Solidarity House. The amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it must include enough facts to notify the court and each defendant of what the plaintiff believes that defendant did to discriminate against her.

Id. at 7–8.

In early 2026, the plaintiff filed an amended complaint. Dkt. No. 12. This order screens that amended complaint.

## I. Screening

"[D]istrict courts have the power to screen complaints filed by all litigants, prisoners and non-prisoners alike, regardless of fee status." Rowe v. Shake, 196 F.3d 778, 783 (7th Cir. 1999); Rezny v. Wis. Dep't of Fin. Insts., Case No. 22-C-1285, 2022 WL 17551151 at *1 (E.D. Wis. Dec. 9, 2022). The court must decide whether the amended complaint raises claims that are legally "frivolous or malicious," that fail "to state a claim upon which relief may be granted" or that seek "monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b). A complaint filed by a self-represented litigant must be liberally construed and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007). But the court is "not charged with seeking out legal 'issues lurking within the confines' of the [self-represented] litigant's pleadings, and the court's duties certainly do 'not extend so far as to require the court to bring to the attention of the pro se litigant or to decide the unraised issues.'" Kiebala v. Boris, 928 F.3d 680, 684–85 (7th Cir. 2019) (quoting Caruth v. Pinkney, 683 F.2d 1044, 1050 (7th Cir. 1982)).

3

Although courts liberally construe their filings, self-represented litigants must comply with Federal Rule of Civil Procedure 8(a)(2), which requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." A plaintiff need not plead every fact supporting her claims; she need only to give the defendant fair notice of the claims and the grounds upon which they rest. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). To state viable claims against the defendant, the complaint must contain allegations that "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth. Id. at 663-64.

A.    Facts Alleged in the Amended Complaint (Dkt. No. 12)

The amended complaint is largely the same as the original complaint, although it is shorter and contains fewer extraneous details. Compare Dkt. No. 1 with Dkt. No. 12. The amended complaint alleges:

> Paul Ludka (FCA US LLC) he failed to submitt Application to HR for the SBU (Salary bargaining Unit) Procument Analyst Position. Joe Nue (Local Union President UAW Solidarity House) Gave me the Position and then delayed my training for 3 years and 8 months failure to represent me. Peter Raith (SBU Shop Chair) UAW Solidarity House) failed to Represent me. Between April 26, 2021– December 2024. This happen At the Mopar warehouse in Milwaukee Wisconsin.

4

> I feel it was done because of my race. This has caused me many sleepless nights I had to see a psychiatrist (Dr. Shah and Mary Girsh-Jensen for Anxiety, depression, distress (emotional) Stellantis denied me Training required for my Awarded Part Procurment Analyst Position from 2021–2024 Stellantis Treated me different than Similiarly situated employees who received timely Training. Union (UAW/Peter Raith) I requested the Union file a grevance regarding delayed Training and lost wages. Peter Raith refused to file or Properly Process my grievance. The Union failed to investigate my Complaint. The Union gave misleading or incorrect reasons for refusing to Act. The Union refusal was arbitrary, discriminatory, or in bad faith, Violating its duty of fair representation. For the Record– CoWorker Beth Hackbarth was Awarded the Position first she started Training 2 weeks Later. She turned down the Position then it was given to me so it took 3 years and 8 months to Start Training. This is another Reason I feel this is discrimination. Over 3 years and 8 months.

Dkt. No. 12 at 2–3 (as in original).

The plaintiff attaches several documents to her complaint. First, she includes a letter from Elizabeth Hackbarth that says Hackbarth "applied for the SBU job here at Stellantis 4/26/21," that she "was [a]ccepted 4/29/21" and that she "started training for the SBU backup job on 5/11/2021." Id. at 6. Hackbarth asserts that she "trained for a few days and did not care for the position and declined" and that she "gave all of [her] training information to [the plaintiff], as she then went for the backup position." Id.

The plaintiff includes what appears to be a union grievance form dated December 11, 2024. Dkt. No. 12-1 at 1–2. The grievance form tells the same general story as her amended complaint. Id. at 1–2. The grievance, however, does not include any mention of the discrimination allegations in her amended complaint. Id. For the "adjustment requested" section, the grievance reads, "Future SBU back up posting should follow a jointly agreed upon process that

5

includes specific time intervals/schedules for training with out exceeding 95 days from successful bid." Id. at 1. There is a sticky note on the grievance that reads, "Peter Raith filled out this grievance." Id.

The plaintiff attaches two notes from doctors. Id. at 3–4. The first, from Dr. Ashok Shah, states that the plaintiff "has been enrolled at this clinic since 1-23-20 for depression." Id. at 3. Dr. Shah writes that the plaintiff "feels her anxiety & depressive symptoms became worse after experiencing [unintelligible] work." Id. The second note, from "Mary Girsh-Jensen LCSW, CSAC" at "Psychiatric & Psychotherapy Clinic," states "I have been treating [the plaintiff] for symptoms of depression and anxiety since 4/22/2025." Id.

In the "relief wanted" section of her complaint, the plaintiff asks for "Back pay, All Damages permitted by law." Id. at 4.

B.    Analysis

Although the plaintiff added more information about the position, the amended complaint still does not provide facts that explain why she thinks that her race and/or color caused the defendants not to promote her, and it fails to state any claim against the union. The amended complaint also loses ground regarding administrative exhaustion.

As the court explained in its initial screening order, to state a discrimination claim under Title VII, "a plaintiff first must exhaust her administrative remedies by filing a charge with the Equal Employment Opportunity Commission and receiving from that commission a right-to-sue letter." Dkt. No. 11 at 5 (citing Chaidez v. Ford Motor Co., 937 F.3d 998, 1004

6

(7th Cir. 2019)). The plaintiff had attached a right-to-sue letter dated March 24, 2025, to her initial complaint, dkt. no. 1-1, satisfying this requirement. Id. at 5–6. Despite the court explaining that this right-to-sue letter was required for her claim and explaining that "[t]he amended complaint takes the place of her prior complaint and must be complete by itself," the plaintiff did not attach the right-to-sue letter to her amended complaint. Nonetheless, the court will not dismiss the amended complaint on this ground.

As the court explained in its December 29, 2025 order, the plaintiff must state sufficient facts to support a claim under Title VII. Federal law prohibits employers from discriminating against an individual because of that individual's race, color, religion, sex, national origin. 42 U.S.C. §2000e-2(a); see also 29 U.S.C. §623(a). To successfully state a claim of employment discrimination, the plaintiff must "allege enough facts to allow for a plausible inference that the adverse action was connected to her protected characteristics." Kaminski v. Elite Staffing, Inc., 23 F.4th 774, 777 (7th Cir. 2022). Not receiving a promotion can be an adverse action. Wince v. CBRE, Inc., 66 F.4th 1033, 1041 (7th Cir. 2023). As with the last screening order, the court will analyze the plaintiff's amended complaint under a failure to promote theory, because she again has asked for backpay. Dkt. No. 12 at 4.

The plaintiff appears to have tried to follow the court's instructions that her amended complaint "must explain what the promotion was for (what a backup SBU officer is) and whether the promotion was for a job at Stellantis Chrysler or for a position with UAW Solidarity House." Dkt. No. 11 at 8. The

7

plaintiff's allegations, however, remain unclear. She added a new tagline for the position: "SBU (salary bargaining unit) – Procument [sic] Analyst Position". Dkt. No. 12 at 2. But she does not explain what this position is. The plaintiff alleges that "Paul Ludka (FCA US LLC)" "failed to submit [her] application to HR for the SBU." Id. FCA US LLC is Stellantis's proper corporate name, see dkt. no. 11 at 1, which implies that the SBU position was with Stellantis. But the plaintiff's next allegation is that Joe Nue "(Local Union President UAW Solidarity House) gave [her] the position and then delayed [her] training for 3 years and 8 months[.]" Dkt. No. 12 at 2. This allegation makes it seem like the position was with the union. Later in the amended complaint, the plaintiff alleges that "Stellantis denied [her] training" and "Stellantis treated [her] different than similarly situated employees who received timely training." Id. at 3. Then the plaintiff alleges that the union failed to properly file a grievance related to the failure to promote. Id. Based on these allegations, it appears that the plaintiff may be alleging that the position was with Stellantis and that it failed to promote her. Accordingly, the court will consider Stellantis's actions in analyzing her discrimination claim.

The plaintiff still does not allege facts that explain why she thinks the failure to promote was based on her race and color. The plaintiff alleges that she "feels" she was denied the promotion "because of [her] race." Dkt. No. 12 at 3. She alleges that Stellantis "treated [her] different than similarly situated employees who received timely training." Id. It appears she is talking about Beth Hackbarth, who the plaintiff alleges "was awarded the position first [sic]

she started training 2 weeks later." Id. These allegations are insufficient for the court to draw a plausible inference that the failure to promote was connected to her race or color. The plaintiff does not allege any statements or actions that demonstrate that her race had anything to do with the failure to promote. The plaintiff does not even tell the court her race or skin color or that of the other employee. The plaintiff did not follow the court's instructions to answer the question "[w]hy does she think that the defendant(s) acted based on her race and/or color, and not for some other reason?" Dkt. No. 11 at 8. The amended complaint still fails to state a Title VII discrimination claim.

In the amended complaint, the plaintiff appears to attempt to bring a fair representation claim against her Union. Fair representation claims arise from a union's "legal obligation to 'serve the interests of all members without hostility or discrimination toward any, to exercise [their] discretion with complete good faith and honesty, and to avoid arbitrary conduct.'" Sullers v. Int'l Union Elevator Constructors, Loc. 2, 141 F.4th 890, 898 (7th Cir. 2025) (quoting Vaca v. Sipes, 386 U.S. 171, 177 (1967)). This duty applies to all union activity and is like the duty a fiduciary owes to their beneficiaries. Id. (citing Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 67, 74 (1991). A plaintiff may bring a fair representation claim based on a union's action that is (1) arbitrary; (2) discriminatory; or (3) made in bad faith. Id. (citing Vaca, 386 U.S. at 177). In addition to showing that the union's action was arbitrary, discriminatory or made in bad faith, a plaintiff must also show that she was harmed by the action, "such that 'the outcome . . . would probably have been different but for

9

the union's activities.'" <u>Id.</u> (quoting <u>Rupcich v. United Food & Com. Workers Int'l Union</u>, 833 F.3d 847, 854 (7th Cir. 2016)).

Here, the plaintiff alleges that the union's refusal to act on her grievance "was arbitrary, discriminatory, or in bad faith, violating its duty of fair representation." Dkt. No. 12 at 3. She claims that she asked the union to file a grievance about the failure to promote but that the union failed to investigate and "Peter Raith refused to file or properly process [her] grievance." <u>Id.</u> She alleges that the "Union gave misleading or incorrect reasons for refusing to Act." <u>Id.</u> The amended complaint does not contain sufficient allegations to plausibly support a fair representation claim.

The plaintiff does not allege facts that support the conclusion that she was harmed by the union's inaction or facts that support the conclusion that but for the inaction she would have been promptly promoted. She does not allege the date she submitted the grievance. She does not explain what the union should have done to solve her problem. Nor does she explain when she started training and whether the union had anything to do with that.

The court will briefly cover the requirements of the arbitrary, discriminatory and made-in-bad-faith elements of a fair representation claim and whether the plaintiff has met any of them. "A union's actions are arbitrary 'only if . . . the union's behavior is so far outside a wide range of reasonableness' as to be irrational." <u>Yeftich v. Navistar, Inc.</u>, 722 F.3d 911, 917 (7th Cir. 2013) (quoting <u>Filippo v. N. Ind. Pub. Serv. Corp.</u>, 141 F.3d 744, 749 (7th Cir. 1998)). "While 'a union may not arbitrarily ignore a meritorious

10

grievance or process it in perfunctory fashion,' it 'has discretion to act in consideration of such factors as the wise allocation of its own resources, its relationship with other employees, and its relationship with the employer.'" Id. (quoting Vaca, 386 U.S. at 191; Neal v. Newspaper Holdings, Inc., 349 F.3d 363 at 369 (7th Cir. 2003)). "The union must provide some minimal investigation of employee grievances, but the thoroughness of this investigation depends on the particular case, and only an egregious disregard for union members' rights constitutes a breach of the union's duty." Id. (quoting Garcia v. Zenith Elecs. Corp., 58 F.3d 1171, 1176 (7th Cir. 1995)). This inquiry is "extremely deferential," id. (quoting Ooley v. Schwitzer Div., Household Mfg. Inc., 961 F.2d 1293, 1302 (7th Cir. 1992)) and precludes a court from "substitut[ing] [its] judgment for that of the union, even if, with the benefit of hindsight, it appears that the union could have made a better call," Ooley, 961 F.2d at 1302.

The plaintiff's allegations seem to meet the generous screening standard. She alleges that the union, through Peter Raith, "refused to file or properly process [her] grievance" over the failure to promote. Dkt. No. 12 at 3. She alleges that the union "failed to investigate [her] complaint." Id. Finally, she alleges that "the Union gave misleading or incorrect reasons for refusing [to act]." Id. Taking these allegations as true, it appears that the union did not investigate the plaintiff's grievance. According to these allegations, the union did not provide "some minimal investigation of the employee grievance[]." See Yeftich, 722 F.3d at 917. Although the plaintiff failed to make the more

11

fundamental allegation that the union's inaction harmed her, at this stage, she seems to have plausibly alleged that the union's inaction was arbitrary.

Turning to discrimination and bad faith, "[t]o establish a breach of the duty of fair representation under [the discriminatory or in bad faith] prongs, the plaintiff must prove 'that the union acted (or failed to act) due to an improper motive.'" Sullers, 141 F.4th at 899 (quoting Neal, 349 F.3d at 369). "Improper motives are 'obviously irrelevant and invidious,' and include, for example, distinctions based on race or sex." Id. (quoting Steele v. Louisville & Nashville Railroad Co., 323 U.S. 192, 203 (1944) & citing Bishop v. Air Line Pilots Ass'n Int'l, 5 F.4th 684, 694 (7th Cir. 2021)).

Here, as she failed to do with her Title VII claim, the plaintiff does not allege any facts that demonstrate that her race, color or other protected characteristic had anything to do with the union's inaction. See Dkt. No. 12 at 3. Although there are more specific requirements for both discrimination and bad faith claims, see Sullers, 141 F.4th at 899–900, they are not relevant here, because the plaintiff fails to allege the improper motive required for both.

The Seventh Circuit has instructed courts to give *pro se* plaintiffs one opportunity to amend their complaints. Zimmerman v. Bornick, 25 F.4th 491, 493–94 (7th Cir. 2022). The court gave the plaintiff an opportunity to amend and provided her with specific instructions, but the amended complaint still fails to state a claim upon which this federal court can grant relief. The court will dismiss the amended complaint with prejudice, meaning without a second opportunity to amend the complaint.

12

## II.    Conclusion

The court **ORDERS** that this case is **DISMISSED WITH PREJUDICE** because it does not state a claim upon which a federal court can grant relief. The clerk will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. See Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. R. App. P. 4(a)(5)(A). If the plaintiff appeals, she should be aware that the appellate filing fee is $605. If the plaintiff seeks to proceed on appeal without prepaying the appellate filing fee, she must file a motion *in this court.* See Fed. R. App. P. 24(a)(1).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within 28 days of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ P. 6(b)(2). Any motion under Rule 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 15th day of July, 2026.

BY THE COURT:

HON. PAMELA PEPPER
Chief United States District Judge

14